# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------- x
           :

JONATHAN IMHOFF and       :
GLEN AURELIUS,         :
on behalf of themselves      :
and all others similarly situated,  :  **Civil Action No. 2:15-679**
           :

     *Plaintiffs*,       :
           :  **Judge Arthur J. Schwab**

       v.         :
           :

WEATHERFORD INTERNATIONAL, :
LLC and WEATHERFORD U.S., L.P.; :
           :

     *Defendants.*      :
           :
-------------------------------------------------------- x

**Plaintiffs' Brief in Support of Unopposed Motion
for Final Approval of Class and Collective Action Settlement
and Approval of Attorneys' Fees and Costs**

Class representatives Jonathan Imhoff and Glen Aurelius submit this brief in support of their motion for final approval of the class and collective action settlement reached in this wage-and-hour lawsuit against Defendants Weatherford International, LLC and Weatherford U.S., L.P., as well as class counsel's request for attorneys' fees and costs in connection with that settlement.  The court preliminarily approved the settlement on April 4, 2016, and appointed The Employment Rights Group as class counsel.  The settlement administrator sent the court-approved settlement notice to all class members, affording the class members an opportunity to participate in the settlement, exclude themselves from the settlement, or object to the settlement's terms.  The deadline for objections and exclusions has now passed, and the parties seek final approval of the settlement and approval of the attorneys' fees and litigation costs described below.

## I.      CLASS CERTIFICATION IS APPROPRIATE.

Before certifying a lawsuit to proceed as a class action, the court must determine that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "If the Rule 23(a) requirements are met, then a court must consider whether the class fits within one of the three categories of class actions set forth in Rule 23(b)."  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 392 (3d Cir. 2015).  When the plaintiffs choose to proceed under Rule 23(b)(3), the court must determine whether "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The court provisionally certified a Rule 23 class in its preliminary approval order (ECF No. 52), and the class representatives now move for final certification under Rule 23(c)(1). *Cf. In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 584 (3d Cir. 2014) (stating that the court may, in its preliminary approval order, make a "preliminary determination" concerning class certification for the settlement class and then reserve the final certification decision for a later date).   For the reasons stated below, the court should conclude that the certification requirements of Rule 23(a) and (b) have been satisfied.

## A.  The Settlement Class Is Sufficiently Numerous.

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no minimum number of members needed for a suit to proceed as a class action."  *Marcus v. BMW of N.A., LLC*, 687 F.3d 246, 595 (3d Cir. 2012).  "Ordinarily, a proposed class of between at least 30 and 40 members will suffice to meet the numerosity requirement," *Epstein v. Moore*, 1988 WL 66213, at *1 (N.N.J. June 13, 1988), especially when the class members are "geographically disparate," *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 309 F.R.D. 195, 204 (E.D. Pa. 2015).  There are thirty-nine members of the settlement class (*see* ECF No. 49-1, Class Action Settlement Agreement and Release ("Agreement"), Exhibit 4) dispersed throughout Pennsylvania, Ohio, Arkansas, Texas, Florida, West Virginia, Kentucky, and Utah.  Thus the numerosity requirement is satisfied.

## B.  There Are Common Questions of Law and Fact.

The commonality requirement is satisfied when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The element of commonality is satisfied if 'the class members have suffered the same injury and . . . the claim depends upon a common contention that is capable of class-wide resolution."  *Cottillion v. United Refining Co.*, 2013 WL 5936368, at

*2 (W.D. Pa. Nov. 5, 2013) (ellipsis in original) (*quoting Savani v. Wash. Safety Mgmt. Solutions, LLC*, 2012 WL 3757239, at *3 (D.S.C. Aug. 28, 2012)).  "'What matters to class certification . . . is not the raising of common "questions"—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (ellipsis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Almost all of the factual and legal issues presented in this case are common to the class.  There is no dispute that Weatherford classified *all* service supervisors at its Buckhannon, West Virginia, and Muncy, Pennsylvania, districts as exempt from the overtime requirements of the FLSA and PMWA.  There is also no dispute that *all* service supervisors in the class regularly worked more than forty hours per week.  Thus the factual and legal issues related to the plaintiffs' *prima facie* case are all common to the class.  With respect to the affirmative defenses, Weatherford's principal defense in this case is the Executive Exemption, 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541,100, which provides that employees are exempt from the overtime requirements if they manage their company's affairs and regularly direct the work of other employees.[1]  The parties continue to dispute whether Weatherford's service supervisors are exempt executive employees, but the evidence suggests that the service supervisors at Weatherford's Buckhannon and Muncy districts performed the same general job duties, and accordingly the questions of fact and law surrounding the application of the Executive Exemption are common to the class.  The requirements of Rule 23(a)(2) have been satisfied.

---

[1]     Many class members are subject to the FLSA exemption for highly compensated employees, which relaxes the exemption standard for employees who make more than $100,000 per year.  *See* 29 C.F.R. § 541.601.  The PMWA does not include a special exemption for highly compensated employees.

### C.  Plaintiffs' Claims Are Typical of the Class.

The typicality requirement focuses on whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."  *Baby Neal* ex rel. *Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).  "'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'"  *Id.* (alteration in original) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)).

The FLSA and PMWA claims asserted by Mr. Imhoff and Mr. Aurelius mirror the class claim.  As noted above, all class members, including Mr. Imhoff and Mr. Aurelius, were classified as exempt from the overtime requirements and were not paid overtime compensation despite regularly working more than forty hours per week.  And all class members, including Mr. Imhoff and Mr. Aurelius, performed the same general job duties at each natural gas well site, allowing for a classwide determination of the applicability of the Executive Exemption.  None of the evidence suggests that the FLSA and PMWA claims asserted by Mr. Imhoff and Mr. Aurelius are somehow atypical of the class, and the typicality requirement is easily satisfied here.

### D.  Class Representatives and Class Counsel Are Adequate.

The final Rule 23(a) inquiry tests whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued:  it considers whether the named plaintiffs' interests are sufficiently aligned with the

absentees', and it tests the qualifications of the counsel to represent the class." *In re Gen. Motors Corp.*, 55 F.3d at 800.

      Mr. Imhoff and Mr. Aurelius have fairly and adequately represented the interests of the class, and they have admirably discharged their duties as putative class representatives. (*See* ECF No. 50, Declaration of Joseph H. Chivers in Support of Preliminary Approval ("Chivers Prelim. App. Decl."), ¶ 14.) These plaintiffs have devoted a substantial amount of time to the development of evidence related not just to their own claims, but to the claims of each member of the putative class. Mr. Imhoff sat for a deposition in this case, and both plaintiffs attended the mediation. The plaintiffs served as liaisons to other class members and spoke with individuals who were interested in joining the case. When Weatherford made its final settlement offer, Mr. Imhoff and Mr. Aurelius strived to decide what was best for the class, rather than focusing on their own best interests. In short, Mr. Imhoff and Mr. Aurelius have been strong advocates for their former colleagues at Weatherford.

      Mr. Imhoff and Mr. Aurelius are represented by counsel with considerable experience litigating class action wage-and-hour lawsuits in this district, including many class-action lawsuits related to the oil-and-gas industry. (*See* Chivers Prelim. App. Decl. ¶ 3; ECF No. 57, Declaration of Joseph H. Chivers in Support of Final Approval ("Chivers Final App. Decl."), ¶¶ 2-5.) To prepare for the mediation, Plaintiffs' counsel deposed Weatherford's operations supervisor, interviewed about two dozen opt-in plaintiffs and potential witnesses, combed through a substantial number of documents produced by Weatherford, reviewed payroll and work records for each class member, and prepared various analyses to estimate the damages of each class member during the class period. (Chivers Prelim. App. Decl. ¶¶ 6-10.) Plaintiffs' counsel and defense counsel negotiated this settlement at arm's length over the course of two mediation

sessions with a highly experienced mediator, and the results of that negotiation establish the adequacy of the representation.  (Chivers Prelim. App. Decl. ¶¶ 7-11.)

### E.  Common Questions Predominate Over Individual Questions.

Finally, the court must examine whether "questions of law or fact common to the class predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  To conduct that inquiry, the court should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). That standard has been met.  Witness interviews, depositions, and work records reveal that each service supervisor at Weatherford's Buckhannon and Muncy districts was classified as exempt from the overtime requirements of the FLSA and PMWA, regularly worked more than forty hours per week, and performed the same general job duties.  Weatherford's fracking operations are highly systematized, and there is little variance in operations among well sites.  Thus almost all of the legal issues touching on Weatherford's liability are common to the class.  Most of the individualized issues in this case relate to damages, and "courts have routinely held that the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)." *In re Plastics Antitrust Litig.*, 2006 WL

6172035, at *10 (E.D. Pa. Aug. 31, 2006) (internal quotation marks omitted).  Thus the common

questions of law and fact predominate over any individualized determinations.

## II.   THE CLASS-ACTION AND COLLECTIVE-ACTION SETTLEMENT IS FAIR AND REASONABLE.

Once the court determines that class certification is appropriate, the court next must

consider whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see*

*also In re Nat'l Football League*, 775 F.3d at 581 ("[W]hen a district court is presented with a

class settlement agreement, the court must first determine that the requirements for class

certification under Rule 23(a) and (b) are met, and must separately determine that the settlement

is fair to the class under Rule 23(e)." (internal alterations and quotation marks omitted)).  Nine

factors are relevant to the court's fairness analysis:

> '(1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.'

*In re Pet Foods*, 629 F.3d at 350 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see*

*also In re Cendant Corp. Litig.*, 264 F.3d 201, 232-43 (3d Cir. 2001) (analyzing and explaining

the nine *Girsh* factors).

The FLSA likewise requires the court to assess the fairness and reasonableness of

the settlement.  *See Vargas v. Gen. Nutrition Ctrs., Inc.*, 2015 WL 4155449, at *1 (W.D. Pa. Mar.

20, 2015); *Weismantle v. Jali*, 2015 WL 1866190, at *1 (W.D. Pa. Apr. 23, 2015).  "When parties

present to the district court a proposed settlement, the district court may enter a stipulated judgment

if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide

dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. June 20, 2012) (quoting *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (4th Cir. 1982)).  "In scrutinizing the agreement for reasonableness and fairness, courts generally proceed in two steps, first considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Altenbach v. Lube Ctr, Inc.*, 2013 WL 74251, at *1 (M.D. Pa. Jan. 4, 2013) (quoting *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *4 (E.D. Pa. Mar. 26, 2012)).

### A.  The Settlement Is Fair, Reasonable, and Adequate Under Rule 23.

All nine of the *Girsh* factors weigh in favor of approving this settlement.  *First*, this is a complex case.  To litigate Weatherford's liability, the parties would rely on the testimony of more than one dozen witnesses who would be called upon to testify about all aspects of the work performed by the class members on a day-to-day basis.  That witnesses would likely include managers and employees from other companies, including the companies that hired Weatherford to perform fracking services at natural gas well sites.  The parties would also look to thousands of documents that describe the daily tasks and responsibilities of Weatherford's service supervisors. With respect to damages, the litigation would require an analysis of off-the-clock work performed by 39 different class members.  That would entail an examination of time records, work schedules, and other data to determine when class members worked overtime. Because off-the-clock work usually is not recorded, moreover, the parties would need to rely on the deposition testimony of representative class members, which would require a large number of depositions and then, perhaps, a statistical analysis of the testimony given at those depositions.  This presentation of

evidence would be both difficult and expensive, and accordingly a pretrial settlement is in the interests of all parties.

*Second*, the class has reacted favorably to the settlement.  Zero class members excluded themselves from the settlement, no one has objected to the settlement's terms, and two-thirds of the 39 plaintiffs elected to participate in the settlement.  (Chivers Final App. Decl. ¶ 12.) That is a strong indication that the class members are satisfied with the settlement.

*Third*, the settlement was reached only after completing two mediation sessions, two depositions, and a thorough review and discussion of Weatherford's payroll and work records, including thousands of documents.  Additional discovery would have required numerous additional depositions, along with a time-intensive, day-to-day analysis of work records to determine the number of hours worked each day.  By the time the parties reached this settlement, the trial was just weeks away.  This was not a situation where attorneys steered the case to an early settlement to avoid discovery and litigation; the parties had completed most of their discovery before negotiating this settlement, and all parties were prepared to try the case.  Thus the parties were well equipped to make informed settlement decisions, and additional discovery was not warranted.  *See In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. … That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

*Fourth*, there is real risk for the plaintiffs in establishing liability.  This case turns on the applicability of the Executive Exemption to the FLSA and PMWA, and Weatherford has claimed throughout the litigation that its service supervisors are managerial employees who direct the work of the other individuals on their fracking crews.  Indeed, there is no dispute that the service supervisors who make up the class are the ostensible leaders of a crew of fracking employees; the dispute instead turns on whether the work instructions given to those crewmembers come from the general contractors who oversee the natural gas well sites, rather than from the service supervisors.  The ultimate outcome of this case would likely turn on whether the service supervisors actually directed the work of the employees they purportedly supervised—and whether the service supervisors were responsible for promoting and disciplining their crewmembers.  There is conflicting evidence on those questions, and the plaintiffs acknowledge the risk that jurors could deem the service supervisors to be exempt executive employees.

*Fifth*, there is some risk to maintaining the class action through trial, as it's possible the trial evidence would reveal individualized issues that predominate over the common questions of fact and law, potentially leading the court to decertify the class. If the deposition or trial testimony revealed distinctions in the day-to-day job functions of different class members, or if that evidence showed highly individualized damages questions that predominate over the common issues of liability, the court could determine that the class members are not similarly situated under Rule 23(a) and 29 U.S.C. § 216(b).  The plaintiffs' view is that any discrepancies in the specific job functions of different class members are minimal, but Weatherford likely has a different view, and there is some risk the court would adopt Weatherford's view if the case proceeded to trial.

*Finally*, the settlement fund provides a fair, reasonable, and adequate recovery to each class member who submitted a claim form.  The settlement agreement provides for a *pro rata*

distribution of the settlement funds based on (i) the length of time each class member worked for Weatherford during the applicable limitations period and (ii) the amount of salary paid to each particular class member for each week worked during the limitations period. (Agreement ¶ 33.) Class members who previously opted into the FLSA collective action through the mechanism established in 29 U.S.C. § 216(b) will also receive an amount of liquidated damages equal to the amount of the class member's settlement award, which reflects the damages available to those plaintiffs under the FLSA as well as the significant contributions that each opt-in plaintiff made to this lawsuit.  Thus the class members who opted into the case under 29 U.S.C. § 216(b) will receive about $250 per week worked at Weatherford during the limitations period—*after* deducting all fees and expenses—and the class members who chose not to opt into the action will receive about $125 per week worked in the limitations period.  (Chivers Final App. Decl. ¶¶ 10-11.)

Because this is a reasonable settlement in light of the recovery to the class members and the attendant risks of litigation, the court should conclude that the settlement is fair, reasonable, and adequate with respect to all class members.

### B.  The Settlement Is Fair and Reasonable Under the FLSA.

Before approving the settlement, the court also must determine whether the settlement "'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. June 20, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354).  "In scrutinizing the agreement for reasonableness and fairness, courts generally proceed in two steps, first considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace."  *Altenbach v.*

*Lube Ctr, Inc.*, 2013 WL 74251, at *1 (M.D. Pa. Jan. 4, 2013) (quoting *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *4 (E.D. Pa. Mar. 26, 2012)).

The reasons for finding the settlement to be fair and reasonable are set forth above, and accordingly the court need only determine whether this lawsuit involves a bona fide employment dispute.  A bona fide employment dispute is one that relates to factual issues rather than legal disputes concerning the statute's coverage or applicability.  *See Lignore v. Hosp. of Univ. of Pa.*, 2007 WL 1300733, at *3 (W.D. Pa. May 1, 2007).  That is the case here:  The parties have elected to settle this lawsuit to resolve disagreements about the extent to which class members directed the work of other fracking crewmembers, which constitutes a bona fide employment dispute.  Thus the court should approve the settlement under the FLSA.

### III.    THE SERVICE AWARDS ARE REASONABLE.

Courts in this district, and throughout this circuit, regularly approve incentive awards for the class representatives.  *See, e.g.*, *Palamara v. Kings Family Rest.*, 2008 WL 1818453, at *6 (W.D. Pa. Apr. 22, 2008).  The service award is designed "'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Hegab v. Family Dollar Stores, Inc.*, 2015 WL 1021130, at *16 (D.N.J. Mar. 9, 2015) (quoting *Dewey v. Volkswagen of Am.*, 729 F. Supp. 2d 546, 577 (D.N.J. 2010)).  These service awards often range between $2,500 and $20,000 per named plaintiff.  *See id.*; *see also, e.g.*, *Naicker v. Warrior Energy Services, Inc.*, Case No. 2:14-1140-MRH, dkt. nos. 88-91 (W.D. Pa. July 12, 2016); *Dull v. Integrated Production Services, Inc.*, Case No. 2:14-cv-1437-NBF, dkt. nos. 59-61, 69 (W.D. Pa. Mar. 24, 2016); *Black v. Wise Intervention Services, Inc.*, Case No. 2:15-cv-453-MPK, dkt. nos. 37-40, 46 (W.D. Pa. Mar. 16, 2016); *Riggs v. Senior Choice, Inc.*, Case No. 3:15-cv-057-KRG, dkt. nos. 39-41, 46 (W.D. Pa. Feb. 19, 2016).

The court should approve service awards of $10,000 for plaintiff Jonathan Imhoff and $7,500 for plaintiff Glen Aurelius.  The two class representatives have been closely involved in this litigation from the beginning.  They have supplied a large amount of information, have made themselves available for countless telephone calls from class counsel, and have served as liaisons with other members of the class.  Both plaintiffs attended the mediation and steered the negotiations that culminated with the class-action settlement agreement.  Mr. Imhoff sat for a deposition in this case, and Mr. Aurelius was prepared to sit for his deposition when the parties reached the settlement.  At all times the class representatives put the interests of the class members before their own interests, and they have invested a considerable amount of their own time and energy.  (*See* Chivers Prelim. App. Decl. ¶ 14.)  The service awards reflect that commitment, and the court should approve those awards.

## IV.    THE COURT SHOULD AWARD THE REQUESTED FEES AND COSTS.

When the court certifies a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Courts in the Third Circuit "generally use one of two methods for assessing the reasonableness of attorneys' fees—a percentage-of-recovery method or a lodestar method."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013).  The court of appeals has described the circumstances in which each method should be used:

> The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and panelizes it for failure.  The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.  It may also be applied in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method.  Although each of these methods is generally applied to certain types of cases, we

have noted previously that it is sensible for a court to use a second method of fee
approval to cross check its initial fee calculation.

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (internal

citations quotation marks omitted).

Thus the percentage-of-recovery method is favored in cases involving a common

fund, as the percentage-of-recovery method provides a strong incentive for class counsel "'to

obtain the maximum possible recovery in the shortest time possible under the circumstances.'"

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 249 (D.N.J. 2005) (quoting *Manners v. Am.*

*Gen. Life Ins. Co.*, No. 98-266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999)). "Indeed,

[the percentage-of-recovery method] is the prevailing methodology used by courts in this Circuit

for wage-and-hour cases." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *19 (D.N.J.

Apr. 8, 2011).

The Third Circuit has identified seven factors to be considered under the

percentage-of-recovery method: (1) the size of the fund and the number of persons benefitted,

(2) whether members of the class have raised substantial objections to the settlement terms or fee

proposal, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of

the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs'

counsel, and (7) fee awards in similar cases. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d

Cir. 2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

To cross-check the fee award under the percentage-of-recovery method using the

lodestar method, the court should multiply the number of hours the plaintiffs' attorneys worked on

the case by a reasonable hourly billing rate for those services, taking into account the prevailing

billing rates in the region, the nature of the services provided, and the experience of the attorneys.

*Gunter*, 223 F.3d at 195 n.1.  Once the court arrives at that lodestar amount, the court may "adjust

the award upward or downward to reflect the particular circumstances of a given case." *Id.* The court's calculations "should be reduced to writing." *Id.*

### A.   Fees: Percentage-of-Recovery Method

In class-action settlements worth millions of dollars, courts often limit the attorneys' fees to 25% of the settlement value "in order to prevent a windfall to counsel." *Erie Cnty. Retirees Ass'n v. Cnty. of Erie*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002). But when the value of the settlement is in the $400,000 to $6.5 million range, courts routinely award fees "ranging from thirty to forty-three percent." *Id.* (citing *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 342-43 (W.D. Pa. 1997)); *see also Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007).

In the Settlement Agreement the parties agreed to an award of $200,000 for attorneys' fees and out-of-pocket litigation costs. (*See* Agreement ¶ 35(b).) In pursuing this case, class counsel incurred $2,960.96 in out-of-pocket expenses. (*See* Chivers Final Approval Decl. ¶ 18.) Class counsel therefore seeks to recover $2,960.96 in out-of-pocket litigation costs and $197,039.04 in fees. Notably, the fee request amounts to 32.8% of the $600,000 settlement fund, which is near the bottom of the typical range of thirty to forty-three percent. *See Creed*, 2013 WL 5276109, at *6 (citing *Martin v. Foster Wheeler Energy Corp.*, No. 06-878, 2008 WL 906472, at *5 (M.D. Pa. Mar. 31, 2008)). Further, as explained below, the seven *Gunter* factors weigh in favor of approving the requested fee.

### 1.   Size of the Fund and Number of Persons Benefitted

The settlement agreement creates a settlement fund of $600,000 on behalf of 39 class members—a gross average settlement of more than $15,000 per person. That is a good recovery for the class, especially considering that only 26 of the 39 eligible class members chose

to participate in the settlement, which effectively increases the gross average settlement to $23,000 per person.  Furthermore, the gross settlement amount does not include (i) the cost of the mediation, (ii) the costs charged by the third-party settlement administrator, or (iii) Weatherford's share of the wage taxes; all of those costs will be borne separately by Weatherford.  (*See* Agreement ¶¶ 31, 32, 36.)  In light of those considerations and all of the factors identified above, this is a very good settlement for members of the class.

### 2.   Presence or Absence of Substantial Objections

Not a single person has objected to either the settlement agreement or the proposed fee award.  (Chivers Final Approval Decl. ¶ 12.)  That "weighs in favor of approval."  *See Creed*, 2013 WL 5276109, at *5; *Bredbenner*, 2011 WL 1344745, at *20.

### 3.   Skill and Efficiency of Attorneys

The skill and efficiency of the lawyers is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'"  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).

Class counsel has substantial experience litigating individual, class, and collective actions under the PMWA and FLSA.  (Chivers Final Approval Decl. ¶¶ 2-5.)  We have represented numerous clients in FLSA and PMWA litigation and have prosecuted numerous FLSA and PMWA class and collective action lawsuits to successful conclusions, including *Tvrdovsky v. Renegade Wireline Services (RWLS),* Case No. 2:13-1463 (W.D. Pa.); *Foster v. Kraft Foods Global, Inc.,* Case No. 2:09-453 (W.D. Pa.); *Dunkel v. Warrior Energy Services Corp.*, Case No. 2:13-cv-695-

MRH (W.D. Pa.); *Haught v. Summit Resources, LLC*, Case No. 1:15-cv-069-JEJ (M.D. Pa.); *Naicker v. Warrior Energy Services, Inc.*, Case No. 2:14-1140-MRH (W.D. Pa.); *Black v. Wise Intervention Services, Inc.*, Case No. 2:15-cv-453-MPK (W.D. Pa.); *Dull v. Integrated Production Services, Inc.*, Case No. 2:14-cv-1437-NBF (W.D. Pa.); *Bastin v. Integrated Production Services, Inc.*, Case No. 2:15-882-NBF (W.D. Pa.); *Bennett v. Silver Creek Services, Inc.*, Case No. 1:15-273-BR (W.D. Pa.); and *Sweeney v. Altoona Regional Health System*, Case No. 2012-GN-2364 (Ct. Com. Pl. of Blair Cnty.).

Class counsel also acted skillfully and efficiently in this litigation.  This case was filed in May 2015, and within nine months class counsel negotiated a "quick settlement that more than adequately compensates the class.  This indicates that class counsel is in fact both skilled and efficient." *Creed*, 2013 WL 5276109, at *5.  As a result of the settlement negotiated by class counsel, each class member is entitled to receive up to $35,764.40.  And they will receive that money within 15 months of the date on which Mr. Imhoff and Mr. Aurelius filed the class-action complaint, which is a very quick turnaround for this type of litigation.  Both the value of the settlement and its speed weigh in favor of approval.  *See id.*

### 4. Complexity and Duration of the Litigation

This was not a simple case.  *See Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) ("FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts.").  Weatherford was prepared to vigorously defend this action by asserting a number of defenses to liability, and by disputing that the claims presented were appropriate for class certification or FLSA collective action treatment.  Weatherford also disputed the number of hours that the class members worked and the applicable formula for calculating any overtime due.  Moreover, in a

class action proceeding, complex procedural issues may frequently arise, offering constant challenges to the propriety of the class certification. Accordingly, the risks and costs of continued litigation are likely to be much higher than those of a typical single-party case.

### 5. Risk of Nonpayment

The risk of non-payment was minimal but real, as Weatherford is confronting the same economic and financial risks that are currently affecting the entire oil-and-gas industry.

### 6. Amount of Time Devoted by Plaintiffs' Counsel

Plaintiffs' counsel spent 726.5 hours working on this litigation, despite the knowledge that many of those hours would not be compensated. (Chivers Final App. Decl. ¶ 13.) We interviewed many of the class members, sent notice of the conditionally certified FLSA collective action to all class members, sent extensive discovery requests to Weatherford, reviewed a large number of documents produced by Weatherford, responded to Weatherford's discovery requests on behalf of all 13 opt-in plaintiffs, took and defended depositions, and prepared for trial. In preparation for the mediation and trial, we prepared an extensive analysis of the likely damages in this case, and we've reviewed and analyzed the case law related to wage-and-hour claims involving unpaid overtime. Plaintiffs' counsel attended two separate mediation sessions and fought to obtain the best possible result for the class members in light of the complexities of the case and the risks of non-payment.

### 7. Awards in Similar Cases

In class-action settlements worth millions of dollars, courts often limit the attorneys' fees to 25% of the settlement value "in order to prevent a windfall to counsel." *Erie Cnty. Retirees Ass'n v. Cnty. of Erie*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002). But when the value of the settlement is in the $400,000 to $6.5 million range, courts routinely award fees

"ranging from thirty to forty-three percent." *Id.* (citing *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 342-43 (W.D. Pa. 1997)).  The fee request in this case amounts to 32.8% of the settlement fund negotiated by class counsel, which is at the bottom of that range.  Thus the fee request is eminently reasonable.  *See Creed*, 2013 WL 5276109, at *6 (citing *Martin v. Foster Wheeler Energy Corp.*, No. 06-878, 2008 WL 906472, at *5 (M.D. Pa. Mar. 31, 2008)).

### B.  Fees: Lodestar Cross-Check

The fee negotiated by counsel for both sides is easily supported under the lodestar cross-check.  To determine the lodestar cross-check, the court must calculate the lodestar multiplier.  *Bredbenner*, 2011 WL 1344745, at *21.  "The multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar."  *Id.* Where there "have been no objections to the lodestar calculations, a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources."  *Id.* (internal quotation marks omitted).

The multiplier "represents 'the contingent nature or risk involved in a particular case and the quality of the attorneys' work.'"  *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)).  "The Third Circuit has approved a cross-check multiplier of 3 in a 'relatively simple' case that did not involve the application of several state laws or carry risks as to liability."  *Id.* (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 724 (3d Cir. 2001)); *see also In re Prudential*, 148 F.3d 283, 341 (3d Cir. 1998) (stating that lodestar multipliers ranging from one to four are common (citing 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14.03 (3d ed. 1992))).

As discussed in the attached declaration, class counsel spent 726.5 hours litigating this case (including time billed by paralegals).  Attorney Joseph Chivers billed at $525 per hour, attorneys Zachary Warren and Jeffrey Chivers billed at $375 per hour, and paralegal Jessica Grass

billed at $125 per hour. (Chivers Final App. Decl. ¶ 13.) Courts in this districts have previously approved those hourly rates for those timekeepers. *See e.g.*, *Dull v. Integrated Production Services, Inc.*, Case No. 2:14-cv-1437-NBF, dkt. nos. 59-61, 69 (W.D. Pa. Mar. 24, 2016); *Naicker v. Warrior Energy Services, Inc.*, Case No. 2:14-1140-MRH, dkt. nos. 88-91 (W.D. Pa. July 12, 2016); *Black v. Wise Intervention Services, Inc.*, Case No. 2:15-cv-453-MPK, dkt. nos. 37-40, 46 (W.D. Pa. Mar. 16, 2016); *Riggs v. Senior Choice, Inc.*, Case No. 3:15-cv-057-KRG, dkt. nos. 39-41, 46 (W.D. Pa. Feb. 19, 2016); *Dunkel v. Warrior Energy Services Corp.*, Case No. 2:13-cv-695-MRH (W.D. Pa.); *Haught v. Summit Resources, LLC*, Case No. 1:15-cv-069-JEJ (M.D. Pa.). Those rates are also substantially less than attorneys and paralegals have billed in similar litigation. *See, e.g.*, *Creed*, 2013 WL 5276109, at *6 (approving billing rates of $625 for attorney and $175 for paralegal).

That produces a lodestar multiplier of just 0.77. (Chivers Final App. Decl. ¶ 17.) That multiplier shows that the value of the services provided to the class *exceeds* the amount of fees requested in this petition, and the multiplier is well within the range approved by courts in this circuit. *See, e.g.*, *Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving lodestar multiplier "slightly above 3" in FLSA lawsuit); *In re Staples Inc. Wage & Hour Employment Practices Litig.*, 2011 WL 5413221, at *5 (D.N.J. Nov. 4, 2011) (approving lodestar multiplier of 2.75 in FLSA case).

### C. Costs

The total amount of the out-of-pocket costs incurred by class counsel in this case is $2,960.96. (Chivers Final App. Decl. ¶ 18.) Those costs are eminently reasonable, and the court should approve the reimbursement of costs in that amount.

**CONCLUSION**

For all of these reasons, the court should (i) certify the class, (ii) finally approve the

settlement as fair, reasonable, and adequate under Rule 23 and the FLSA, (iii) approve the service

awards for the class representatives, and (iv) approve the award of fees and costs for class counsel.

<u>Dated</u>:  August 10, 2016
        Pittsburgh, PA

By:   <u>/s/ Joseph H. Chivers</u>

Joseph H. Chivers, Esq.
   PA I.D. No. 39184
   jchivers@employmentrightsgroup.com
Zachary K. Warren, Esq.
   DC I.D. No. 1015292
   zkw@employmentrightsgroup.com
THE EMPLOYMENT RIGHTS GROUP
100 First Avenue, Suite 650
Pittsburgh, PA  15222
Tel.:  (412) 227-0763
Fax:  (412) 774-1994

*Counsel for Plaintiffs*
*and all others similarly situated*

<u>Certificate of Service</u>

I hereby certify that, on this 10th day of August, 2016, a true and correct copy of the foregoing **Plaintiffs' Brief in Support of Unopposed Motion for Final Approval of Class Action Settlement and Approval of Attorneys' Fees and Costs** was filed electronically via the Court's CM/ECF system, which will send notice to counsel of record.


By:  <u>/s/ Joseph H. Chivers</u>
Joseph H. Chivers, Esq.
THE EMPLOYMENT RIGHTS GROUP
100 First Avenue, Suite 650
Pittsburgh, PA  15222
jchivers@employmentrightsgroup.com
Tel.:  (412) 227-0763
Fax:  (412) 774-1994

*Counsel for Plaintiffs*
*and all others similarly situated*